UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN LANGLEY,<br><br>        Plaintiff,<br><br>vs.<br><br>BRAD LITTLE; IDAHO STATE BOARD OF CORRECTION GOVERNING MEMBERS; DIRECTOR IDOC JOSH TEWALT, and EXECUTIVE DIRECTOR ASHLEY DOWELL,<br><br>        Defendants. | Case No. 1:21-cv-00181-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Brian Langley filed a prisoner civil rights action to challenge the Idaho Department of Correction's (IDOC) method of preparing inmates for parole and the Idaho Commission of Pardons and Parole's (ICPP) decision to deny him parole after he served the fixed portion of his sentence. (Dkt. 1.) Plaintiff's Complaint was conditionally filed by the Clerk of Court due to his status as a prisoner. A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. After reviewing the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

Complaint, the Court has determined that it will be dismissed with leave to amend and that class action status will not be granted.

## REVIEW OF COMPLAINT

1. **Standard of Review**

Under modern pleading standards, Federal Rule of Civil Procedure 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal/Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, citing *Twombly*, 550 U.S. at 556. A plaintiff must provide sufficient factual allegations to show that there is "more than a sheer possibility that a defendant has acted unlawfully." *Ibid*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ibid*.

Stated differently, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Bare allegations that amount to merely a restatement of the elements of a cause of action, without adequate factual support, are not enough to withstand a Federal Rule of Civil Procedure 12(b)(6) challenge for dismissal for failure to state a claim upon which relief can be granted. *See id*.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

In addition, the Prison Litigation Reform Act (PLRA)[1]requires the Court to screen all pro se prisoner and pauper complaints to determine whether they have stated a claim upon which relief can be granted before such complaints are served on the defendants. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B).

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside the federal court's narrow grant of jurisdiction—encompass those claims that may (or may not) have factual support, but nevertheless are barred by a well-established legal rule.

The Court liberally construes a plaintiff's pleadings to determine whether the case should be dismissed for a failure to plead sufficient *facts* to support a cognizable legal theory or for the *absence* of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).[2] Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend as explained in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq*.

[2] *Jackson* was superseded by statute on other grounds as stated in *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). For Plaintiff's purposes, 42 U.S.C. § 1983 is an implementing statute that makes it possible to bring a cause of action under the Amendments of the United States Constitution.

2. **Background**

Plaintiff alleges that he completed the fixed portion of his criminal sentence, making him parole-eligible, but that the ICPP denied him parole. He is now serving the indeterminate portion of his sentence. He has filed self-initiated progress reports yearly, but has yet to be paroled. He asserts that prison officials have received funding to use for prisoner rehabilitation and parole supervision, but that they have not implemented aids to help prisoners qualify for parole. He brings claims upon a variety of legal theories against the officials charged with prisoner programming and parole decisionmaking in the state of Idaho.

3. **Due Process Claim (¶¶ 22)**

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law, but a person cannot bring a due process claim unless he demonstrates that he was deprived of one of

these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Here, while Plaintiff sets forth compelling philosophical, practical, and logical reasons why society should provide timely rehabilitative treatment to inmates to prepare them for parole upon eligibility and why the state's parole preparation resources and decision-making processes should be revamped to meet this goal, there is no adequate legal basis for bringing such claims in federal court.

There is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *See Swarthout v. Cooke,* 562 U.S. 216, 220 (2011); *Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987). Therefore, an inmate can bring a procedural due process challenge to a parole denial decision only when there is a *state-created* liberty interest in parole. *Swarthout*, 562 U.S. at 220.

Federal courts are required to look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole arising from state statutes. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) ("a State's highest court is the final judicial arbiter of the meaning of state statutes").[3] In

---

[3] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 131 S.Ct. 859 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

*Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court addressed the liberty interest question. The court relied on the Idaho sentencing statute, I.C. § 19-2513, which uses the nonmandatory words "[t]he offender may be considered for parole or discharge at any time during the indeterminate period of the sentence." The *Banks* Court held that, as a result of the statute's language, in Idaho "parole is not an automatic right or liberty interest." *Id*. at 908.

The *Banks* Court acknowledged the existence of I.C. § 20-223, which governs parole commission decisions and contains the phrase "a parole *shall* be ordered when" (emphasis added). However, the court did not find the statute's "shall" language controlling in the liberty interest analysis. Rather, the Idaho Supreme Court relied on I.C. § 19-2513, which governs sentencing. That statute does not contain mandatory language, but it instead states that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence."

The *Banks* decision forecloses Plaintiff's ability to bring a due process claim in a federal civil rights action. Therefore, unless the Idaho Supreme Court reconsiders its decision that there is no liberty interest arising from the sentencing and parole statutes, the federal courts are bound by the Idaho Supreme Court's interpretation.

Based upon the United States Supreme Court's strong language in *Swarthout v. Cooke*, no federal due process interest in parole-related issues is found in the United States Constitution, and a right to federal review of a due process claim can be found

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

only where a state-created liberty interest exists. No such interest exists in Idaho. Therefore, Plaintiff has failed to state a federal claim upon which relief can be granted on a Fourteenth Amendment due process theory.

   4. **Rehabilitation Claim (¶23)**

There is no constitutional right to rehabilitation. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987)(no right to a particular security classification or to prison rehabilitative services); *Bauman v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985)(no constitutional right to work furlough classification); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982)(no general right to rehabilitation).[4] Therefore, Plaintiff has not stated a claim with his allegations that IDOC officials have failed to provide him with rehabilitative opportunities.

   5. **State Law Claims (¶ 23)**

Plaintiff also brings his claims under state laws: Idaho Code § 20-223(3) ("The department of correction shall create sufficient programming opportunities, such that lack of access to programming is not the primary cause in delaying parole eligibility.") and the Idaho Constitution. While the Court can hear these claims if appropriate under the Court's supplemental jurisdiction powers, it can do so only if the state law claims are

---

[4] *Hoptowit* was abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (setting forth due process liberty interest test).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

anchored to a cognizable federal claim. Here, there is no federal claim upon which Plaintiff can proceed.

### 6. Claims for Which Plaintiff Does Not Have Standing (¶ 24)

Plaintiff asserts that parole officials force parolees to choose between paying their parole fees or providing for their families. If they choose to provide for the families and forgo the fees, they are sent back to prison, he states. Plaintiff has not been paroled; therefore, he has no standing to assert this claim.

Even if he had standing, Plaintiff has not stated sufficient facts showing that the State of Idaho does not have indigency provisions in its parole fee scheme, or that the scheme is unfairly administered. In fact, Idaho Code § 20-225 provides that "[t]he division of probation and parole in the department of correction may exempt a person from the payment of all or any part of the foregoing contribution" upon a finding that the "offender has diligently attempted but been unable to obtain employment," or the "offender has a disability affecting employment, as determined by a physical, psychological or psychiatric examination acceptable to the division of probation and parole."

### 7. Eighth Amendment Claims (¶ 25)

Plaintiff alleges that holding him past the fixed portion of his sentence and having him serve the indeterminate portion of his sentence violates his right to be free from cruel and unusual punishment under the Eighth Amendment. The United States Supreme Court

has upheld the constitutionality of indeterminate life sentences with the possibility of parole after a specified period of time. *Lockyer v. Andrade*, 538 U.S. 63, 74 (2003); *Ewing v. California*, 538 U.S. 11, 3 (2003). "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." *Belgarde v. Montana*, 123 F.3d 1210, 1215 (9th Cir.1997). Plaintiff is serving an indeterminate life sentence and no violation of the Eighth Amendment occurs merely because it is determined that he is unsuitable for release on parole during the service of that prison term. *See Harris v. Long*, No. CV 12–1349–VBF (PLA), 2012 WL 2061698, at *8 (C.D.Cal. May 10, 2012) ("[T]he Court is unaware of any United States Supreme Court case holding that either the denial of parole and continued confinement of a prisoner pursuant to a valid indeterminate life sentence, ... constitutes cruel and unusual punishment in violation of the Eighth Amendment. Indeed, the Supreme Court has held that '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'")(*quoting Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 7(1979)); *Prellwitz v. Sisto*, No . Civ S–07–0046 JAM EFB P, 2012 WL 1594153, at *6 (E.D.Cal. May 4, 2012) (rejecting a similar Eighth Amendment claim and holding that "[w]hile Plaintiff might have hoped or expected to be released sooner, the Board's decision to deny him a parole release date has not enhanced his punishment or sentence."); *see also Rosales v. Carey*, No. CIV S–03–0230 JAM DAD (TEMP) P, 2011 WL 3319576, at *8 (E.D.Cal. Aug.1, 2011) ("[T]he

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

Ninth Circuit has said that any emotional trauma from dashed expectations concerning parole 'does not offend the standards of decency in modern society.'")(quoting *Baumann v. Arizona Dept' of Corrections*, 754 F.2d 841 (9th Cir. 1985)).

Hence, Plaintiff has stated no cruel and unusual punishment claim by his allegations that he was not paroled upon first becoming eligible.

### 8. Equal Protection Claim (¶ 26)

Plaintiff also alleges that Defendants have violated his right to equal protection of the law under the Fifth and Fourteenth Amendment regarding his parole rights.[5] He asserts several different theories and sets of facts to support his claim.

Under the Fourteenth Amendment's Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals

---

[5] Plaintiff has no Fifth Amendment due process claim. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2004) ("the Fifth Amendment prohibits the *federal* government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several *States*") (emphasis added).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

were intentionally treated differently without a rational relationship to a legitimate state purpose, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

If there is "an obvious alternative explanation" for the state action, a plaintiff must provide factual allegations that give rise to a plausible inference that the action was the result of unconstitutional discrimination on the basis of "race, religion, or national origin." *Iqbal*, 556 U.S. at 676-77, 682. A plaintiff must provide sufficient allegations pointing to a discriminatory motive that "nudg[es]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" *Id*. at 683 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff first asserts that his equal protection rights are violated by the State's decision to treat parole hearings like fact-finding courtrooms where inmates are not provided an attorney and by relying on false claims and prison C-notes that are unproven. allegations do not support an equal protection claim because convicted felons are not similarly situated with pretrial detainees. Parole hearings for convicted inmates are not like criminal proceedings for persons who are deemed innocent until proven guilty. *Cf. Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)(parole revocation context)(holding that because parole revocation is not part of a criminal prosecution, "the full panoply of rights due a defendant in a [criminal] proceeding does not apply"). Thus, the Constitution is not offended by the different due process requirements for persons duly convicted of

felonies. Attorneys may be employed, but are not required or provided with state funding. Evidentiary standards are relaxed. Plaintiff's allegations here do not state a claim upon which relief can be granted.

Plaintiff also alleges that his equal rights have been violated because some prisoners are granted parole upon their first eligibility, and others are not. Plaintiff has not stated a plausible claim simply by showing that a number of other prisoners have been denied parole after serving the fixed portion of their sentences. (Dkt. 3, pp. 3-4.)

Plaintiff is serving a sentence of "failure to register or report address change," with a parole hearing date of September 2021 and a full term release date of December 11, 2023. *See* https://www.idoc.idaho.gov/content/prisons/offender_search/detail/131832. He does not include facts showing how he was particularly well-suited for parole when he first became eligible, and why denial in his case offends equal protection principles.

He provides letters from several other inmates who have been denied parole:

- Cacey O. Olson has been convicted of crimes of aggravated assault and aggravated battery. He was previously paroled and later was denied parole for "public safety; supervision history; and new crime on parole." The new crimes were misdemeanors for destruction of evidence and drug paraphernalia, for which he was given a two-day sentence by the Court. However, the ICPP saw fit to revoke his parole, which, he argues, is a much harsher punishment that he received as a sentence for the crime. The Commission told him not to get any more DORs while in prison before he applies for parole again. (Dkt. 5-1.)

- Kashmyr Chance Clark, convicted of possession of a controlled substance, says that he was sentenced to one year fixed and three years indeterminate. The ICPP told him to serve his full term at his first parole hearing. He feels it is unfair because he is not a violent offender or a sexual predator. (Dkt. 4.)

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

- Jonathan Whitney is serving an indeterminate life sentence for lewd and lascivious conduct with a minor under the age of 16. He says that he is 14 years past his fixed term, and has been denied parole twice for no reason. He has a parole board hearing date of April 2022. "I shouldn't have to do "more time th[a]n my judge sentenced me to," he asserts. (Dkt. 3.)

- Dustyn Brooks, convicted of possession of a controlled substance and domestic assault or battery, believes he was denied parole for no reason. The ICPP stated reasons of "no release plan" and "not taking accountability"; he states he presented sufficient facts to show that he had a strong release plan, a stable supportive group of friends and family, and an attitude of remorsefulness. He was given a new parole hearing date that is six months past his fixed term. (Dkt. 6.)

Plaintiff has failed to show that these inmates are similarly situated to each other or to the persons who *were* granted parole. Parole is an individualized privilege, not a right; parole board discretion, therefore, is required. Further, it is a well-established principle that "a State is not constrained in the exercise of its police power to ignore experience which marks a class of offenders or a family of offenses for special treatment." *See Skinner v. State of Oklahoma ex rel. Williamson,* 316 U.S. 535, 540 (1942). Rather, the Equal Protection Clause is violated only where "the law lays an unequal hand on those who have committed intrinsically the same quality of offense." *Id*. at 541.

Plaintiff also alleges that the ICPP denies parole to all inmates appealing their cases or inmates who continue to assert their actual innocence. However, he does not include sufficient facts to support this allegation. For example, of the list of all the inmates who have been denied parole in his Exhibit C (Dkt. 1-3), he does not show that their parole was denied because they appealed their criminal convictions or asserted they

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

are innocent.

As required by I.C. § 20-223(4), the IDOC and the ICPP must submit to the Idaho legislature an annual "Timely Release Report" by February 1 of every year. The Court takes judicial notice of the existence and content of the reports submitted for 2020 and 2021, attached to this Order as Exhibits 1 and 2. The Court does not assume, or make a determination of, the correctness of the statistics supporting the contents of the report, but points to it only to show that official statistics seem to show, year after year, that "credit for time served—parole eligible upon arrival or parole eligible within six months of arrival" is the reason for delay of parole in 51.4% of the delayed release cases (125 of 243), up from 50.4% from 2020; the inmate's "own actions—institutional behavior/DORs" account for 23.5% of delayed release (57 of 243); a "previously denied parole" accounts for 19.8% of delayed release (48 of 243); and programming accounts for 4.5% of delayed releases (11 of 243), down from 11% in 2020. *See* Exhibit 1, p. 5 and Exhibit 2, p. 7.

The report addresses parole delays for only property or drug offenses, not crimes against persons, "to enable consistent comparisons of the data," even though the statute has been updates to omit this narrowing of the population eligible for parole. *See* Exhibit 1, p. 2. The report is merely statistical and does not show why the largest category of delay has not been remedied. The official report briefly explains its statistical methodology. *Id.*, p. 3. It is unclear how Plaintiff calculated his statistics.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

Again, for equal protection purposes, Plaintiff must state facts supporting the elements of an equal protection claim, pointing to patterns that show that a certain segment of the population that is similarly situated to another segment of the population is being treated unfairly. If Plaintiff has facts showing that the ICPP denies parole to anyone who has filed an appeal or who asserts innocence, that would support an equal protection claim. However, Plaintiff's supporting letters show that parole was denied for a variety of reasons—none of which is an appeal or an assertion of innocence. Similarly, the "Timely Release Report" shows that parole was denied for other reasons. Plaintiff's long list of inmates who were denied parole does not correlate either the filing of an appeal or the assertion of innocence with parole denial.

Plaintiff will be given leave to file an amended complaint on equal protection grounds, only, if he reviews his data and shows that he has facts supporting the elements of such a claim.

9. **Claims against Executive Director (¶ 27)**

Plaintiff alleges that the ICPP executive director is violating the Fourteenth Amendment and Idaho Code § 20-213 and abusing her discretionary powers by denying parole based on their housing plans and banning inmates from entire state districts without a supporting judgment of the trial court. Because there is no liberty interest in being placed on parole, these claims fail to state a federal claim upon which relief can be granted.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**

"Banning inmates from entire state districts" may give rise to an equal protection claim, but it is impossible to tell what Plaintiff means without further factual support. He may include this equal protection claim in his amended complaint if he has a factual basis for doing so.

10. **Remedies Requested**

Plaintiff requests that the Court order defendants to release the inmates who are parole eligible. The Supreme Court has made it clear that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, release from incarceration is not an available remedy in an action brought under 42 U.S.C. § 1983, and should not be included as a requested remedy in an amended complaint.

11. **Conclusion**

Because there is no legal basis supporting Plaintiff's noncognizable claims for relief, the Fourteenth Amendment due process and Eighth Amendment cruel and unusual punishment claims are subject to dismissal for failure to state a federal claim upon which relief can be granted, and they should *not* be included in an amended complaint. The claims based on the state statutes and state Constitutional are more suitable for the state courts to decide, and he may desire to bring them there. If he attempts to bring them as

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 16**

supplemental state law claims, they may or may not be heard in federal court.[6] The equal protection claims are subject to dismissal without prejudice with leave to amend. If Plaintiff does not file an amended complaint within 30 days, the Court will enter judgment and close this case.

## PLAINTIFF'S REQUEST FOR CLASS ACTION STATUS

Because Plaintiff cannot proceed on any of his claims, his request for class action status will be denied as moot. Plaintiff shall not include this request in an amended complaint, but he may file a separate motion for conversion to a class action if he is permitted to proceed on his claim(s).

## FINANCIAL RESPONSIBLITY

Plaintiff has not paid the filing fee or submitted an in forma pauperis application. The Clerk of Court has provided the forms for doing so to him. Plaintiff is ordered to either pay the filing fee of $400.00 or file a non-prisoner in forma pauperis application with the filing of his amended complaint.

---

[6] *See* abstention rules when important state interests are at stake in *Younger v. Harris*, 401 U.S. 37 (1971), and *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982),

## ORDER

**IT IS ORDERED:**

1. The Complaint (Dkt. 1) in this case is DISMISSED without prejudice for failure to state a claim upon which relief can be granted, with leave to amend.

2. Plaintiff shall either pay the filing fee of $400.00 or file a non-prisoner in forma pauperis application with the filing of his amended complaint.

3. If Plaintiff desires to proceed, he must file an amended complaint as to his equal protection claim no later than 30 days after entry of this Order.

4. Failure to take these actions will result in entry of judgment and closure of this case.

DATED: September 28, 2021

B. Lynn Winmill
U.S. District Court Judge